UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


NATHAN E. HINES

                                        CIVIL ACTION

VERSUS

                                        NUMBER 11-349-JJB-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION


### NOTICE

     Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

     In accordance with 28 U.S.C. §636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

     Baton Rouge, Louisiana, May 23, 2012.

                         _Stephen C. Riedlinger_

                         STEPHEN C. RIEDLINGER
                         UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


NATHAN E. HINES

CIVIL ACTION

VERSUS

NUMBER 11-349-JJB-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION


## MAGISTRATE JUDGE'S REPORT

Plaintiff Nathan E. Hines brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of Michael J. Astrue, the Commissioner of Social Security (Commissioner) denying his claims for supplemental security income (SSI) and disability insurance benefits.

For the reasons which follow the Commissioner's decision should be affirmed.


## Standard of Review

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive

and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 404.1505 and § 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 404.1520 and § 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct.

885, 891-92 (1990); 20 C.F.R. §§ 404.1525 and § 416.925.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he or she is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he or she cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

## Background

Plaintiff was 28 years of age at the time of the ALJ's decision, and he attended high school through the ninth grade. AR p. 30.[1] Plaintiff filed applications for SSI and disability benefits on May 21, 2008, alleging a disability onset date of August 10, 2007 due to problems with his neck and back and pain. Plaintiff claimed an inability to work because he was having trouble standing and walking for long periods, could not bend down without pain, could not lift anything over 30 or 40 pounds, and was

---

[1] Plaintiff is classified as a younger person. Under the regulations a younger person is under the age of 50. It is not generally considered that age will seriously affect a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c). Plaintiff's educational level is classified as limited. 20 C.F.R. §§ 404.1564(b)(3) and 416.964(b)(3)

drowsy and tired from his medications. AR p. 154. The claim was initially denied on November 6, 2008, and the plaintiff filed a request for a hearing before an administrative law judge (ALJ), which was held on May 11, 2010. AR pp. 24-69, 71-84. The ALJ issued an unfavorable decision on June 11, 2010. AR pp. 12-23.

At the second step the ALJ determined that plaintiff had the following severe impairments: lumbar degenerative disc disease, cervical spondylosis, and obesity.[2] The ALJ concluded, however, that the claimant had the residual functional capacity (RFC) to perform a modified range of light work, with the exception of no overhead reaching and no rapid rotation of his head. The ALJ specifically determined that the plaintiff had "full manipulative abilities." AR pp. 20-21.[3] At the fourth step the ALJ found that these impairments prevented the plaintiff from performing his past relevant work as a welder, pipe fitter, cashier, roofer, construction worker, and meter reader.[4] Proceeding to the fifth and final step of the disability analysis, the ALJ considered the

---

[2] The ALJ determined at the third step that the plaintiff's conditions did not meet or medically equal a listed impairment. The plaintiff did not object to this finding. AR pp. 19-20.

[3] In evaluating the plaintiff's RFC, the ALJ also found that the plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. AR p. 21.

[4] AR pp. 155-56, 174-81 (summary of plaintiff's past work).

medical evidence, the testimony of the claimant, and the testimony
of the vocational expert ("VE"), William Stampley, and found that
the plaintiff would be able to perform the requirements of
representative occupations such as assembler, cannery worker, and
gate guard. AR pp. 21-23.[5] Considering all this evidence, and
relying on the medical-vocational guidelines as a framework for
decision, the ALJ determined the plaintiff could perform other work
that existed in significant numbers in the national economy, and
that he was not disabled within the meaning of the Social Security
Act.

Plaintiff submitted a request for review of the ALJ's
unfavorable decision, and on April 19, 2011, the Appeals Council
denied plaintiff's request for review, making the ALJ's findings
the final decision of the Commissioner. Plaintiff then filed his
petition for judicial review on May 26, 2011. In this appeal the
plaintiff contends that the following errors were committed: (1)
the ALJ improperly rejected the treating sources's opinions without
good cause and without providing good reasons; (2) no evidentiary
choices existed to support the RFC findings adopted by the ALJ;
and, (3) the ALJ provided an incorrect hypothetical to the
vocational expert, which failed to carry the Commissioner's burden
of proof at the fifth step.

---

[5] Citing SSR 00-04p, the ALJ found that the VE's testimony was
consistent with the information contained in the Dictionary of
Occupational Titles. AR p. 22.

## Analysis

Plaintiff first argued that the opinions of Dr. Carlos Dumas are entitled to controlling weight as a treating physician, and that contrary to the regulations, the ALJ did not show good cause when he discounted or rejected Dr. Dumas' opinions. In response, the Commissioner argued that Dr. Dumas was not a "treating physician" and therefore it was not error for the ALJ to deny controlling weight to his opinions. A review of the record as a whole demonstrates that the plaintiff's first claim of error is unsupported.

Generally speaking, a treating physician is a physician who has seen a patient "a number of times and long enough to have obtained a longitudinal picture" of the plaintiff's impairment. 20 CFR §§ 404.1527(d)(2) and 416.927(d)(2). In other words, treating physicians provide some kind of continuous care. In *Taylor v. Astrue*, 245 Fed. Appx. 387, 391 (5th Cir. 2007), the court found that the claimant visited a physician twice over the course of four years, and determined that the physician was not a treating physician given the limited treatment relationship established with that physician. Similarly, the court in *Hernandez v. Heckler*, 704 F.2d 857, 860-61 (5th Cir. 1983), found that the claimant visited his physician twice in a 17-month period, and therefore that doctor also was not a treating physician.

In this case, Dr. Dumas examined the plaintiff just once, on

April 8, 2010, and that examination revealed the plaintiff's deep tendon reflexes and motor-sensory levels were within normal limits. Dr. Dumas's notes of that visit do not indicate that he reviewed any other physicians' reports or diagnostic studies. AR p. 302-14. On May 5, 2010, Dr. Dumas prepared correspondence to the plaintiff's attorney and stated that the plaintiff's "pain was so severe as to interfere with activities of daily living," and a "review of previous diagnostic studies confirmed diagnosis of disc herniation and degenerative disc disease." He further stated that that the plaintiff could sit, stand, or walk for no more than 15 minutes at a time followed by an equal period of rest, and that he could not function as a reliable employee in any job setting no matter how light in exertional level. AR p. 340.

However, there is nothing in the record to suggest that the plaintiff saw Dr. Dumas other than the one time on April 8, 2010. Even assuming the plaintiff saw Dr. Dumas again before May 5, 2010, he did not see Dr. Dumas frequently or long enough for Dr. Dumas to provide a detailed, longitudinal picture of the plaintiff's impairments. Therefore, the record does not support the plaintiff's claim that the ALJ committed reversible error by failing to consider and weigh the statements from Dr. Dumas as evidence from a treating physician under 20 CFR §§ 404.1527(d)(2) and 416.927(d)(2).

Furthermore, an ALJ is free to reject the opinion of any

physician when the evidence supports a contrary conclusion. *Bradley v. Bowen*, *supra*. The ALJ's decision shows that he did not accept Dr. Dumas' opinion because it was inconsistent with other evidence in the record and was not supported by the diagnostic tests.[6] AR p. 18. A review of the record as a whole demonstrates that this conclusion is supported by substantial evidence. For example, the record reflects that: 1) the October 16, 2002, MRI showed some mild desiccation at L4-5 and L5-S1 but no evidence of nerve root impingements or evidence of disc herniation; 2) the October 6, 2004, MRI shows some mild neural foraminal narrowing without overall nerve root contacts or spinal canal narrowing; 3) the August 24, 2006, MRI showed minor L4-5 and L5-S1 foraminal stenosis, without focal disc herniation; (4) entirely normal physical examination results were reported in July 2008; and, (5) good or only slightly decreased range of motion of the back and neck, with negative straight leg raising, femoral stretch, Patrick's and slump tests in May 2009. AR pp. 212, 214, 240-44, 298-99, 317-18.

---

[6] In the plaintiff's reply memorandum he cited page 18 of the ALJ's decision and stated that "ALJ Jobe recognized that Dr. Dumas was the claimant's pain management specialist.... Nevertheless, the Commissioner now argues that Dr. Dumas is not a treating source." Record document number 11, pp. 1-2. This statement is incorrect. The ALJ stated on page 18 that "Exhibit 13F contains records of examination done by Dr. Carlos Dumas, pain management specialist." This is obviously a general statement that Dr. Dumas is a pain management specialist, not that he was the plaintiff's treating specialist.

In summary, Dr. Dumas' opinions were conclusory and otherwise unsupported by the evidence. It was within the ALJ's discretion to discredit Dr. Dumas' opinion, and his decision to do so was supported by substantial evidence. Plaintiff's first claim of error is without merit.

Plaintiff also argued that the ALJ's RFC determination failed to include restrictions established by the record, and that no evidentiary choices supported the RFC finding. Consequently, plaintiff argued, the vocational testimony which incorporated this unsupported RFC finding, does not carry the Commissioner's burden at the fifth step to show that the plaintiff can do other work in the national economy. The record demonstrates that this claim of error is also without merit.

The ALJ concluded that the plaintiff had the residual functional capacity to perform light work and a full ability to manipulate objects. However, the plaintiff could not do overhead reaching or rapid rotation of his head. AR p. 20. Contrary to the plaintiff's arguments, this RFC finding is supported by substantial evidence contained in the record as a whole. This evidence is found in the report of Dr. Levie Johnson, and the plaintiff's statements regarding his limitations and daily activities.

Dr. Johnson examined the plaintiff on July 16, 2008. Dr. Johnson evaluated the range of motion of the plaintiff's cervical and lumbar spine, as well as his ankle, elbow, hip, knee, shoulder

and wrist, and ankle, and indicated a normal range of motion in all areas. AR p. 244. In his assessment of the plaintiff's functional abilities, Dr. Johnson found that the plaintiff "has normal pushing, pulling, and reaching with normal crouching, squatting and stooping. The patient is able to climb on and off the exam table independently and is able to dress and undress himself independently." AR p. 242. He did not assign any limitation or restriction on the plaintiff's ability to lift, carry, stand, walk, sit, push or pull. However, before he reported the results of his examination, he noted an estimated functional level of activity – "lifting capacity 25 pounds, sitting 30 minutes, standing 30 minutes, and distance walking two blocks." AR p. 239. This latter notation was contained in the history portion of the examination.

Thus, Dr. Johnson essentially did not find any restrictions on the plaintiff's ability to perform work-related activities. In accordance with the regulations, the ALJ correctly evaluated the effects of the plaintiff's obesity, and considered his subjective complaints of pain and limitations. The ALJ specifically stated that in finding the plaintiff had the ability to do light work he considered the plaintiff's obesity and how it exacerbated his lower back and neck impairments.[7] AR p. 20. The ALJ also properly

_____

[7] Effective October 25, 1999, obesity was deleted as a listed impairment. *Weary v. Astrue*, 288 Fed.Appx. 961 (5th Cir. 2008);

(continued...)

considered the plaintiff's subjective complaints of pain and limitations, but only partially credited them in light of the objective medical evidence and the plaintiff's daily activities.

The ALJ's decision not to fully credit the plaintiff's complaints of pain and limitations is supported by substantial evidence. For example, the ALJ cited the inconsistency between the plaintiff's subjective complaints and his daily activities, noting that the plaintiff testified that he takes care of his disabled mother, cleans the house, cooks, and grocery shops. Plaintiff also reported that he plays with his son, takes him to the park and sports activities, and took him camping two times in the past year. AR pp. 19-21. As examples of the inconsistency between plaintiff's subjective complaints and the medical evidence, the ALJ noted that plaintiff complained that any standing and/or walking caused his

_____

[7](...continued)
*Wooten v. Apfel*, 108 F.Supp.2d 921, 924 (E.D.Tenn. 2000); *Allen v. Apfel*, 2001 WL 253120 (E.D.La., Mar. 14, 2001). However, the Social Security regulations require that obesity and its effects be considered in determining whether a claimant meets the listings related to the musculoskeletal, respiratory and cardiovascular systems, and considered in combination with other impairments throughout the sequential disability analysis. *See*, Listing 1.00.Q.; Listing 3.00.I.; Listing 4.00.F; SSR 02-01p, Evaluation of Obesity, 2000 WL 628049 (S.S.A. Sept. 12, 2002).
The ALJ's analysis complied with this regulation, as the ALJ stated on page 20 of his decision:
> The claimant is obese. This has been considered as to how it affects his low back and neck pursuant to Social Security Ruling 02-1p. His back and neck are not that severe. Were it not for the exacerbating affect of his obesity, he could do more than light work. There is nothing in the record where any doctor ever stated that his obesity caused his neck and back to be disabling.

knees and ankles to swell, yet "not one doctor has ever found any extremity swelling." AR p. 20. Plaintiff also complained of pain down his right shoulder and into his hand, but no doctor found any limitation in his arms or hands, and Dr. Johnson specifically found the function of his upper extremities to be normal. Therefore, the medical reports and tests discussed above, and consideration of the plaintiff's obesity and his level of daily activities, is evidence which is relevant and sufficient for a reasonable mind to accept as adequate to support the conclusion that the plaintiff was able to do a modified range of light work, specifically, the ability to do light work, except for no overhead reaching and no rapid rotation of his head.[8]

Furthermore, contrary to the plaintiff's argument, the portions of the record discussed above show that credible evidentiary choices in the record existed to support the ALJ's RFC finding. This case is distinguishable from those cases where the

_____

[8] 20 CFR §404.1567(b) and §416.967(b). Light work is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Commissioner's decision was reversed because there was no report or evidence from a qualified medical expert indicating the effects of the plaintiff's condition on his ability to do work-related activities. In *Williams* the ALJ rejected the opinions of three treating doctors that the plaintiff could only do sedentary work, and determined the plaintiff's residual functional capacity based on conclusions the ALJ drew solely from medical evidence and physical therapy records which contained no information on the effects of the impairments on the claimant's functional abilities. In *Ripley* the record did not contain any evidence on the effects of the claimant's condition on his ability to work, and the only relevant evidence on the issue was the claimant's own testimony. Unlike *Williams* and *Ripley*, the ALJ in this case did not rely solely on evidence of the plaintiff's medical conditions or the plaintiff's testimony. The ALJ's RFC finding here was supported by the July 2008 consultative examination of Dr. Johnson, as well as the medical evidence and the plaintiff's statements about his daily activities. Plaintiff's claim of reversible error in the ALJ's analysis and determination of his residual functional capacity is without merit.

After evaluating the plaintiff's residual functional capacity the ALJ correctly turned to the evidence from the vocational expert to determine whether the plaintiff could do his past work or any

other work.[9]  As evident from the plaintiff's residual functional capacity, the plaintiff's severe impairments resulted in some nonexertional limitations.  Therefore, after determining that the plaintiff was not able to do any of his past work, the ALJ was required to obtain vocational expert evidence to support the disability determination at the fifth and final step of the analysis.[10]  In response to the questions presented at the hearing, which fairly incorporated all of the plaintiff's limitations as

---

[9] Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country; when there is a significant number of jobs, in one or more occupations, having requirements which the claimant is able to meet with his physical or mental abilities and qualifications.  It does not matter whether work exists in the immediate area in which the claimant lives, a specific job vacancy exists for the claimant, or the claimant would be hired if he applied for work.  However, isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where the claimant lives are not considered work which exists in the national economy.  20 C.F.R. §§ 404.1566(a) and 416.966(a).

[10] It is well established that if a claimant has nonexertional limitations the ALJ is required to obtain vocational expert testimony to support the findings at step five.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).  Under *Bowling* the hypothetical question posed to the expert must incorporate reasonably all the impairments and limitations of the claimant recognized by the ALJ, and the claimant or his representative must be given the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting any purported defects in the question.  The impairments and limitations of the claimant recognized by the ALJ and included in his question must be supported by the evidence.  *Bowling*, 36 F.3d at 436; *Boyd*, 239 F.3d at 707; *Carey*, 230 F.3d at 145; *Masterson*, 309 F.3d at 273.  The record reflects that the plaintiff's attorney was given a full opportunity to question the expert at the administrative hearing.  AR pp. 64-69.

determined by the ALJ, the expert stated that there were numerous occupations existing in significant numbers in the national economy that the plaintiff would be able to perform - assembler, cannery worker and gate guard. This vocational evidence constitutes substantial evidence to support the ALJ's finding at the fifth step that the plaintiff is not disabled within the meaning of the Social Security Act.

## Conclusion

Plaintiff's claims of error are not supported by the record. The record considered as a whole establishes that the ALJ applied the proper legal standards and substantial evidence supports his determination at the fifth step that the plaintiff is not disabled. The final decision of the Commissioner should be affirmed.

## RECOMMENDATION

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of Social Security Michael J. Astrue, denying the applications for disability and supplemental security income benefits filed by plaintiff Nathan E. Hines be affirmed, and this action be dismissed.

Baton Rouge, Louisiana, May 23, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE